ELENA MARGARITA VEGA, ETC., demandante y apelada, *v.* MANUEL VEGA OLIVER y RAMÓN VEGA, JR., demandados y apelantes.

Número: 11873   Resuelto: 15 de junio de 1962

*Jorge M. Morales* y *Ramón L. Nevárez,* abogados de Ramón Vega, Jr., apelante, *Córdova & González y Carlos Cebollero,* abogados de la apelada.

Sala integrada por el Juez Presidente señor Negrón Fernández y los Jueces Asociados señores Blanco Lugo y Dávila.

EL JUEZ ASOCIADO SEÑOR BLANCO LUGO emitió la opinión del Tribunal.

La menor Elena Margarita Vega, representada por su madre con patria potestad Elena Vázquez de Marín, inició una acción en reclamación de alimentos para que se dictara sentencia condenando a su padre Manuel Vega Oliver, o en su defecto a su abuelo paterno Ramón Vega, Jr., a satisfacerle una pensión alimenticia de $150 mensuales. Se alegó expresamente que la pensión solicitada era necesaria para cubrir los gastos de mantenimiento y educación de la menor demandante "en adición a la limitada ayuda que puedan prestarle sus abuelos maternos y su madre." En la contestación formulada por el padre demandado se adujo que sus ingresos no le permitían pagar la referida pensión. Por su parte, el abuelo demandado invocó como defensa especial que la prestación de los alimentos reclamados correspondía al padre de la demandante y que éste no adolecía de ninguna incapacidad ni impedimento que le excusara de su obligación. Después de haberse celebrado la correspondiente vista, el tribunal de instancia, considerada la situación económica de los demandados, accedió a fijar la pensión mensual solicitada, y condenó a Manuel Vega Oliver a satisfacer a la demandante la suma de $60 y al abuelo demandado Ramón Vega, Jr. a pagar $90. Les impuso además el pago de la suma de $100 a cada uno para honorarios de abogado. Los demandados apelaron.[1]

---

[1] A pesar de que ambos demandados apelaron de la sentencia dictada, el padre Manuel Vega Oliver no perfeccionó el recurso de apelación. El único apelante que radicó alegato, conteniendo el correspondiente señalamiento de errores, fue el abuelo Ramón Vega, Jr.

De la prueba presentada surge que el matrimonio contraído por los padres de la menor demandante fue disuelto en 1943 mediante sentencia de divorcio que incluyó un pronunciamiento confiriendo la patria potestad a la madre; que la menor demandante residía a la fecha de la vista y desde el año anterior en la República de Venezuela en compañía de su madre con patria potestad, quien había contraído nuevas nupcias; que al ocurrir el divorcio entre sus padres la menor pasó a vivir con sus abuelos maternos, que la sostuvieron, pero quienes debido a vaivenes de la fortuna no estaban en condiciones de continuar asistiéndola; que el padre de la menor solamente había comenzado a pasarle a ésta una suma de $30 mensuales a partir de la fecha de la iniciación de la reclamación judicial; que la madre de la demandante no tiene ingresos particulares, ya que carece de bienes propios; que el actual esposo de la madre de la demandante contribuye a sufragar los gastos de ésta, pues la menor vive en el hogar conyugal y se le proporciona además la transportación a la escuela, y otros gastos necesarios para mantener la posición y el nivel social a que dicha menor ha estado acostumbrada desde su nacimiento; que la reclamante se ha criado en un buen ambiente y desde pequeña ha asistido a escuelas privadas y ha recibido "todo lo necesario" (T.E., pág. 15), aunque "sin exageración" (T.E., pág. 13); que los gastos mensuales en que se incurre para el sostenimiento y educación de la menor ascienden a $215.

La cuestión principal que presenta este recurso se refiere a la obligación del abuelo paterno de una menor de edad no emancipada de ayudar al sostenimiento de ésta. ¿Cuál es el carácter y extensión de esta obligación cuando ambos padres de la alimentista están vivos? ¿Hasta qué punto está supuesta la madre divorciada que ha pasado a segundas nupcias a compartir la responsabilidad de proporcionar alimentos a su hija menor? Examinemos los preceptos de ley aplicables.

La obligación de prestar alimentos a los descendientes menores de edad—que emana de los afectos naturales y de la certidumbre del parentesco—está consagrada en cuanto a los padres en los artículos 118 y 153 del Código Civil, 31 L.P.R.A. secs. 466 y 601, y en cuanto a los demás ascendientes, en el artículo 143 del mismo cuerpo legal, 31 L.P.R.A. sec. 562.(²)    El artículo 153 de nuestro código, a diferencia de su correspondiente el 155 del Código Civil Español,(³) impone la obligación en forma indivisible tanto al padre como a la madre, al disponer expresamente que ambos tienen, respecto de sus hijos no emancipados, "el deber de alimentarlos . . . educarlos e instruirlos *con arreglo a su fortuna* . . . " Este derecho a percibir alimentos que tienen los hijos no se extingue ni se altera por razón del divorcio entre sus padres por preceptuarlo así explícitamente el artículo 108 de dicho Código.(⁴)  ▉

Establecido que la obligación de prestar alimentos subsiste conjuntamente sobre el padre y la madre aun después del divorcio, y sin que la exigibilidad dependa del ejercicio de la patria potestad, cabe preguntar si esta responsabilidad recae sobre la nueva sociedad de gananciales que pueda haber constituído cualesquiera de los padres que haya pasado a segundas nupcias.    La respuesta nos la ofrece el número 5 del artículo 1308 del Código Civil, que, entre otras cargas

---

(²) Para un estudio del estado de la legislación en varios países sobre los alimentos entre parientes, véase, Fernández Clérigo, *El Derecho de Familia en la Legislación Comparada* (1947), págs. 527–550.

(³) En consonancia con el sistema de patria potestad subsidiaria que se establece a través de todas las disposiciones que regulan las relaciones paterno-filiales, el artículo 155 del Código Civil Español impone idéntico deber "al padre, *y en su defecto,* a la madre." Los tratadistas españoles más modernos abogan por un sistema conjunto para el ejercicio de la patria potestad para así hacerse eco de la tendencia actual al reconocimiento de los derechos maternos. José Ma. Castán Vázquez, *La Participación de la Madre en la Patria Potestad* (1957).

(⁴) Dice en parte así: "El divorcio no privará en ningún caso a los hijos nacidos en el matrimonio de ninguno de los derechos o ventajas que por la ley les están señalados ʹo que les correspondan por razón del matrimonio de sus padres . . ."

de la sociedad de gananciales, incluye "(e)l sostenimiento de la familia y la educación de los hijos comunes y de los legítimos de uno solo de los cónyuges.(⁵)   Con clara inspiración explica Scævola(⁶) el fundamento del precepto en las siguientes palabras:

"Estableciendo una novedad respecto de sus precedentes legislativos, el artículo 1.408 declara también cargo de la sociedad conyugal la educación de los hijos legítimos de uno solo de los cónyuges.   Un sentimiento muy humano ha movido seguramente al legislador a establecer esta excepción de la doctrina tradicional, en la que constituía siempre obligación privativa de cada cónyuge el sostenimiento de sus hijos propios.   Supone el Código que al contraer matrimonio un viudo con hijos, el otro cónyuge respeta y hace suya en lo posible la situación creada, y se dispone con toda benevolencia a la ayuda de todos los seres con quienes adquiera obligación legal de compartir la vida.   Una justicia rigorosa y seca impone al padre o madre la obligación exclusiva de sostener a su hijo a su costa, con independencia de los medios económicos del otro cónyuge. Mas si el hijo legítimo que vive en la compañía de su padre y del nuevo cónyuge va a contribuir, como si lo fuera de los dos, a las satisfacciones del matrimonio y a participar de todas sus desventuras; si va a criarse al lado de los otros hijos del nuevo matrimonio, y va a pasar acaso con ellos los dulces años de la infancia y a ser su compañero y su hermano, ¿no repugna un tanto a la constitución y funcionamiento de la familia que se le discuta el pan que come, la ropa que estropea, la instrucción que adquiere, cuando por desgracia no hubiere recibido de su padre difunto bienes suficientes para atender con holgura a estas necesidades?"

---

(⁵) La obligación de la sociedad de gananciales impuesta por este artículo en cuanto se refiere al hijo de uno de los cónyuges no se limita a la educación, sino que incluye también su sustento.   Scævola, Código Civil (1905), tomo XXII, pág. 285, indica que debe rechazarse una aplicación literal porque "la regla de interpretación que obliga a hacer de las conclusiones absurdas, se impone en este caso abrumadoramente."   Don Emilio Menéndez, en su obra *El Matrimonio* (1939), pág. 319, sostiene que se debe el sustento al hijo legítimo de uno solo de los cónyuges porque forma parte de la familia.

(⁶) Código Civil (1905), tomo XXII, págs. 283-284.

·Goyena, citado por Manresa, (⁷) recoge el mismo pensamiento ·cuando dice que "El que se casa con viudo o viuda no puede ignorar si tiene hijos y la obligación que contrae para man-tenerlos; lo contrario ocasionaría disgustos y discordias en los segundos y ulteriores matrimonios." Ahora bien, es preciso aclarar que los alimentos a que se refiere este artículo 1308 que debe prestar la sociedad de gananciales al hijo de uno de los cónyuges son los dispuestos en el artículo 153 ya ·citado, o sea, mientras el hijo es menor de edad, y los que respondan a la educación del alimentista; si éste es mayor ·de edad, es aplicable el artículo 143, y entonces la responsa-bilidad sería exclusiva del padre o la madre, sin que pueda ·dirigirse contra la sociedad de gananciales que cualesquiera ·de ellos pueda tener constituída. Así se reconoció expre-samente en la Sentencia 101 del Tribunal Supremo de España ·de fecha 20 de diciembre de 1952 (III Jurisprudencia Civil, tomo 40, págs. 956, 967–970).

Podría argüirse que este artículo 1308 no cubre la situa-·ción de un cónyuge divorciado que contrae segundas nupcias porque se tomó del artículo 1408 del Código Civil Español ·en donde no existen los efectos del divorcio que se reconocen ·en Puerto Rico. En otras palabras, que en España no es posible la concurrencia respecto a la obligación de alimentar ·de los padres cuando uno de ellos ha contraído un segundo ·matrimonio. Una interpretación similar del artículo 1325 ·del Código Civil en cuanto al derecho a alimentos de la mujer ·divorciada mientras se liquida la sociedad de gananciales fue ·rechazada por este Tribunal en *Pérez* v. *Tribunal de Distrito*, 69 D.P.R. 4, 21 (1948), en donde dijimos que una interpretación literal de la frase cónyuge superviviente con-·tenida en dicho artículo excluiría de sus disposiciones a una ·mujer divorciada, pero que la misma no se justificaba "a la luz de su historia." Parece conveniente agregar que tanto

(⁷) Comentarios al Código Civil Español (5a. ed., 1950), tomo IX, pág. 607.

682

la muerte como el divorcio son causas de disolución del matrimonio, y que hasta donde sea posible, debemos reconocerle los mismos efectos.

Por otro lado, se ha justificado la imposición de esta carga a la segunda sociedad de gananciales basándose en que corresponde a ésta el usufructo de cualesquiera bienes pertenecientes a los hijos menores de uno solo de los cónyuges, artículo 1301 del Código Civil, 31 L.P.R.A. sec. 3641, y a que corresponde a la sociedad de gananciales lo que cada uno de los cónyuges perciba por su trabajo, industria o negocios, artículo 1303, 31 L.P.R.A. sec. 3643. Dice Manresa, *op. cit.*, pág. 607–608, "El principio es lógico: puesto que todo el trabajo del padre o de la madre, y todo su capital, y aun el de los hijos menores en su caso, pasa a ser utilizado y aprovechado por la sociedad de gananciales, y de los productos de este trabajo y de los frutos de ese capital habrán de sacarse los alimentos, nada más natural que de tal fondo (la sociedad de gananciales) se tome lo necesario al efecto." Véase, Borrell y Soler, *Derecho Civil Español*, T. 4, pág. 440. ▮

Ahora bien, la responsabilidad de los abuelos en cuanto al pago de alimentos a sus nietos es subsidiaria, o sea, es solamente exigible en el caso de que *ambos padres* no estén capacitados física y mentalmente para proporcionárselos a sus hijos menores. Sentencias 42 de 27 de abril de 1911 (Jurisp. Civil, vol. 121, pág. 268) y 13 de 10 de enero de 1906 (Jurisp. Civil, vol. 103, pág. 783). De ahí que sea necesario acreditar que los llamados preferentemente a esa prestación carecen de medios para sufragarlos. Sentencias 158 de 24 de noviembre de 1925 (Jurisp. Civil, vol. 168, pág. 685), 117 de 24 de noviembre de 1920 (Jurisp. Civil, vol. 151, pág. 560) y 95 de 5 de abril de 1902 (Jurisp. Civil, vol. 93, pág. 551). Cuando se trata de padres divorciados, debe justificarse que ambos están impedidos de cumplir cabalmente con su obligación, y si alguno o ambos han con-

traído nuevas nupcias, debe probarse que la nueva sociedad de gananciales no pueda satisfacerlos. █

En el caso específico que consideramos se alegó expresamente que la madre de la demandante solamente podía prestarle una "limitada ayuda". La prueba reveló además que la sociedad de gananciales constituída por la madre con su segundo esposo[8] presta alguna ayuda a la menor demandante para su sustento y educación, aunque ésta no era suficiente para cubrir todos sus gastos y atenciones. También surge que el padre de la demandante tampoco podía sufragar totalmente estos gastos indispensables. Siendo ello así, la obligación del abuelo paterno era exigible. Es posible que si el demandado apelante hubiera enfocado la cuestión en la forma en que lo hemos hecho en esta opinión el resultado hubiese sido distinto ante la posibilidad de que se hubiese establecido que la sociedad de gananciales de la cual forma parte la madre de la menor estaba en condiciones de satisfacer totalmente los alimentos, pero nada podemos hacer al respecto en vista de que esta cuestión no se planteó. El demandado se limitó a alegar que el padre estaba en condiciones de atender a su hija[9] y a establecer este hecho dirigió sus esfuerzos durante la vista.

---

[8] Aun presumiendo que la ley en donde la sociedad de gananciales tiene constituído su domicilio fuere la aplicable, la solución sería idéntica, pues el artículo 165 del Código Civil de Venezuela también dispone que "Serán de cargo de la comunidad . . . el mantenimiento de la familia y la educación de los hijos comunes y también los de uno solo de los cónyuges en los casos en que tienen derecho a alimentos."

[9] El apelante alegó también que de venir obligado a prestar alimentos a su nieta hacía uso del derecho de opción que le confería el artículo 148 del Código Civil, 31 L.P.R.A. sec. 567, recibiendo y manteniendo en su propia casa a la demandante. No es necesario que discutamos este punto, ya que según aparece de los autos, la alimentista se encuentra actualmente emancipada por matrimonio. Véase, sin embargo, *Moll* v. *Llompart*, 17 D.P.R. 694 (1911).

Al dictarse sentencia el abuelo afianzó—sujeto al resultado del presente recurso de apelación—las cuotas alimenticias correspondientes al período comprendido entre la iniciación de la acción y la fecha de la sentencia. Es ésta la única razón por la cual el recurso no es académico.

684

*En virtud de todo lo expuesto se desestima la apelación interpuesta por el apelante Manuel Vega Oliver, y en cuanto al recurso de apelación del demandado Ramón Vega, Jr., se confirma la sentencia dictada por el Tribunal Superior, Sala de San Juan, en 10 de marzo de 1955.*