*779 TEXTO COMPLETO DE LA RESOLUCIÓN
Mediante escrito de certiorari, Carlos A. Bahamundi Morales recurre ante nosotros solicitando que revoquemos la Resolución emitida el 5 de octubre de 2006, notificada y archivada en autos el 9 de octubre del mismo mes y año, por el Tribunal de Primera Instancia (T.P.I.), Sala de Mayagüez.
Por los fundamentos que exponemos a continuación, denegamos el auto de certiorari solicitado.
I
Decretado el divorcio entre el peticionario Carlos A. Bahamundi, (en adelante, señor Bahamundi), y la recurrida Diana Nazario Vega (en adelante, señora Nazario), por consentimiento mutuo el 8 de marzo de 2002, el T.P.I. estableció, por anuencia entre las partes, una pensión alimentaria de $650.00 mensuales en beneficio de los tres menores de edad productos del matrimonio. En la actualidad, los menores tienen 20, 13 y 16 años de edad y residen con su madre, la señora Nazario.
Se acordó además, que el padre no custodio, el señor Bahamundi pagaría una cantidad adicional directamente a los menores para las meriendas. De igual forma, acordó cubrir la mitad de los gastos escolares, sin incluir las mensualidades para el pago del colegio privado.
El 4 de agosto de 2003, el padre solicitó una rebaja de pensión alimentaria la cual fue declarada no ha lugar de forma provisional. El 16 de agosto de 2005, la madre presentó una solicitud de aumento de pensión. Así pues, se señaló y celebró vista el 29 de junio de 2006, en la cual se dilucidaron las peticiones de aumento y rebaja de ambas partes.
Celebrada la vista y aquilatada la prueba, la Examinadora de Pensión Alimentaria determinó que el señor Bahamundi y su madre, la señora María Morales, son los dueños de Empresas BM donde trabaja como Director de Operaciones. Esto, contrario a la contención del señor Bahamundi de que era un mero empleado con un salario neto legal de $800.00. Por tal razón, le imputó un ingreso neto mensual legal de $2,184.00, por lo cual le asignó pagar en beneficio de los menores de edad la cantidad de $1,180.00 mensuales de pensión alimentaria.
En desacuerdo con la referida determinación, el señor Bahamundi presentó moción de reconsideración el 22 de septiembre de 2006. En respuesta, el 29 de septiembre de 2006, la Examinadora de Pensión Alimentaria reaccionó mediante un informe especial oponiéndose a los planteamientos del señor Bahamundi. El 5 de octubre de 2006, notificado y archivado en autos el 9 de octubre del mismo año, el T.P.I. acogió las recomendaciones de la Examinadora de Pensión Alimentaria del presente caso, y declaró no ha lugar la moción de reconsideración.
Inconforme con dicha determinación, el señor Bahamundi recurre ante esta curia y plantea la comisión de los siguientes errores:

“ERRÓ EL T.P.I. AL IMPUTAR LA MITAD DEL INGRESO DE LA CORPORACIÓN EMPRESAS BM AL 
*780
IMPLÍCITAMENTE DESCORRER EL VELO CORPORATIVO E IMPUTARLE AL PETICIONARIO LOS INGRESOS DE LA CORPORACIÓN EMPRESAS BM.

ERRÓ EL T.P.I. AL IMPUTARLE AL PETICIONARIO UN INGRESO MAYOR AL INFORMADO POR ÉSTE SIN TENER BASE ALGUNA EN LA EVIDENCIA, NI EN LOS TESTIMONIOS PRESENTADOS NI EN DERECHO.

ERRÓ EL T.P.I. AL REALIZAR UNA IMPUTACIÓN DE SALARIO EXCESIVA. ”

II
A
Sabidoes que los casos relacionados con alimentos están revestidos del más alto interés público, más aún cuando se trata de menores de edad. López v. Rodríguez, 121 D.P.R. 23, (1988); Negrón Rivera y Bonilla, Ex parte, 120 D.P.R. 61 (1987). Además, “el derecho a reclamar alimentos es parte esencial del principio de conservación que constituye piedra angular del derecho constitucional a la vida.” Martínez v. Rodríguez, 160 D.P.R. _ (2003), 2003 J.T.S. 134; Chévere v. Levis, 152 D.P.R. 492 (2000).
Nuestro Tribunal Supremo ha expresado que la obligación de proveer alimentos “surge de la relación patemo-filial que se origina en el momento en que la paternidad o maternidad quedan establecidos legalmente.” Versa de un deber que “existe por un derecho natural a percibir alimentos que simplemente ha sido formalizado por el legislador convirtiéndola en derecho positivo y vigente y, por el otro lado, creando en el ánimo del obligado el deber de proporcionarlos independientemente de su voluntad de cumplir.” Pedro F. Silva-Ruiz, Alimentos para menores de edad en Puerto Rico: las guías mandatorias basadas en criterios numéricos para la determinación y modificación de pensiones alimenticias, 54 Rev. Col. Abog., abril-junio 1991, en la pág. 112.
Así pues, la obligación de proveer alimentos se diferencia del resto de las obligaciones, pues “se trata de un deber legal que existe entre el alimentista y el alimentante en virtud del vínculo parental personalismo que los une, donde la prestación debida es vital para la persona del acreedor.” Lo anterior explica porqué el Estado como parte de su política pública ha legislado ampliamente para velar por su cumplimiento. López v. Rodríguez, supra\ Chévere v. Levis, supra.
Esta obligación está consagrada en los artículos 118, 143 y 153 del Código Civil, 31 L.P.R.A. secs. 466, 562 y 601, e “incluyen todo lo que es indispensable para el sustento, habitación, vestido y asistencia médica según la posición social de la familia”. Véase, López v. Rodríguez, supra; Guadalupe Viera v. Morell, 115 D.P.R. 4 (1983). Además, la cuantía en que se fijen los alimentos será proporcional a las necesidades del menor que las recibe y los recursos del que los da. Art. 146 del Código Civil, 31 L.P.R.A. sec._; Véase también, Sec. VI, Art. 19 de la Ley Especial de Sustento de Menores, 8 L.P.R.A. sec. 518. López v. Rodríguez, supra; Guadalupe Viera v. Morell, supra; Bra v. Pardo, 113 D.P.R. 217 (1982).
La obligación es indivisible y aplica a ambos padres (padre y madre), teniendo el deber de alimentar, tener en su compañía, educar e instruir con arreglo a su fortuna a sus hijos no emancipados. López v. Rodríguez, supra’, Vega v. Vega Oliver, 85 D.P.R. 675, 679 (1962). Se ha dicho también que el derecho de alimentos que tienen los hijos respecto a sus padres no se extingue con el divorcio de éstos. Art. 108 del Código Civil, 31 L.P.R.A. see. 384.
La Ley Especial de Sustento de Menores, Sec. II Art. 2(8 L.P.R.A. sec. 501 (9), define ingreso como “cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución por servicios prestados como funcionarios o empleados del Estado Libre Asociado de Puerto Rico, del Gobierno de los Estados Unidos de América, según lo permitan las leyes y *781 reglamentos federales aplicables o de profesiones, oficios, entidades en cualquiera que sea la forma en que se pagaren; o de profesiones, oficios, que surjan de la posesión o uso del interés en tal propiedad; .... o la operación de cualquier negocio explotado confines de lucro o utilidad, y ganancias, beneficios, rendimientos, fondos, emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica.” (Énfasis nuestro).
Por otro lado, los tribunales están obligados a tomar en consideración la economía subterránea que prevalece en Puerto Rico. Ésta se da en varias modalidades afectando a las instituciones de orden social y público en Puerto Rico. La economía subterránea ocurre cuando se comete fraude contributivo, se provoca y se aparenta una reducción de ingresos que es ficticia, lo que a su vez debilita la economía del país. Además, frecuentemente se intenta aparentar tener un ingreso menor al que realmente tiene el alimentante con la intención de defraudar. Véase López v. Rodríguez, supra; Sarah Torres Peralta, La Ley Especial de Sustento de Menores, San Juan, P.R., Publicaciones STP, Inc., 1997, a lapág. 2.34-2.35.
Los mecanismos ilegales y fraudulentos de la economía subterránea pueden manifestarse de distintas maneras incluyendo el desvío de dinero de una empresa o negocio en Puerto Rico, como también sacando dinero fuera de Puerto Rico, a través de otras jurisdicciones, utilizando entes corporativos, nombres ficticios y otros mecanismos. Ibíd.
En López v. Rodríguez, supra, se hizo mención de un estudio que hiciera el Secretario de Hacienda en el 1987 donde se confirmó que el mayor grado de evasión proviene de personas con negocios propios, seguidos por varios grupos de profesionales y finalmente, por algunos contribuyentes asalariados. “En términos relativos, la economía subterránea en Puerto Rico es dos veces mayor que en los Estados Unidos, donde representa sólo el 8% del ingreso bruto nacional...”. Págs. 68-69.
B
En Arguello v. Arguello, 155 D.P.R. 63 (2001), se estableció que la capacidad económica de cada alimentante se determina al tomar en cuenta todos los ingresos que devenga, incluso hasta los que no aparecen informados en la Planilla de Información Personal (PIPE). Los tribunales no están limitados a considerar únicamente la evidencia testifical o documental sobre los ingresos. Al fijar la cuantía de la pensión, pueden tomar en consideración aspectos tales como el estilo de vida que lleva el alimentante, su capacidad para generar ingresos, la cantidad de las propiedades con que cuenta, el tipo de empleo y profesión que ejerce, y cualesquiera otras fuentes de ingresos. Deberán tomar en cuenta, además, la realidad de la economía subterránea que prevalece en Puerto Rico. Énfasis nuestro.
Inclusive, los tribunales en primera instancia, con arreglo a la prueba circunstancial que se le someta pueden imponer una obligación alimentaria si pueden inferir de esa prueba que el alimentante tiene a su alcance medios suficientes para cumplir con dicha obligación. Arguello v. Arguello, supra.
En cuanto a la apreciación de la prueba, el Tribunal Supremo ha reiterado que el juez sentenciador, ante quien deponen los testigos, es quien tiene la oportunidad de verlos y observar su manera de declarar, es quien aprecia sus gestos, titubeos, contradicciones, manerismos, dudas, vacilaciones y, por ende, de ir formando gradualmente en su conciencia la convicción en cuanto a si dicen la verdad. Arguello v. Arguello, supra; Figueroa v. Am. Railroad Co., 64 D.P.R. 335, 336 (1994); J.A. Cuevas Segarra, Tratado de Derecho Civil, San Juan, Publicaciones J.T.S., 2000, T. II, pág. 685.
C
Es norma fundamental de nuestro ordenamiento jurídico de que los tribunales apelativos, en ausencia de error, *782 pasión, prejuicio o parcialidad, no deben intervenir con las determinaciones de hechos, la apreciación y las adjudicaciones de credibilidad realizadas por los tribunales de instancia. Rodríguez Medina v. Pérez Torres, 164 D.P.R. _ (2005), 2005 J.T.S. 41; Ortiz v. Municipio, 163 D.P.R. _ (2004), 2004 J.T.S. 171; Arguello v. Arguello, supra; Trinidad v. Chade, 153 D.P.R. 280 (2001).
Sabido es que “un foro apelativo no puede descartar y sustituir por sus propias apreciaciones, basadas en un examen del expediente del caso, las determinaciones tajantes y ponderadas del foro de instancia. ” (Citas omitidas) Rolón v. Charlie Car Rental, Inc., 148 D.P.R. 420, 433 (1999). En fin, las determinaciones de credibilidad que hace el tribunal sentenciador merecen gran deferencia por parte del tribunal apelativo por cuanto es ese juzgador quien, de ordinario, está en mejor posición para aquilatar la prueba testifical desfilada, ya que fue quien oyó y vio declarar a los testigos. Ramos Milano v. Wal-Mart, 168 D.P.R. __ (2006), 2006 J.T.S. 106; E.L.A. v. P.M.C., 163 D.P.R. _ (2004), 2004 J.T.S. 202; Pueblo v. Bonilla Romero, 120 D.P.R. 92 (1987).
III
Por estar los señalamientos de error íntimamente relacionados entre sí, los discutiremos en conjunto. En esencia, el presente recurso está apoyado principalmente en que el tribunal a quo erró al imputarle al señor Bahamundi un ingreso mayor al informado, descorriendo el velo corporativo de Empresas BM y, por consiguiente, imponerle una pensión alimentaria excesiva.
En cuanto a su señalamiento de que la Examinadora de Pensiones Alimentarias descorrió el velo corporativo, no le asiste la razón. Según nuestro ordenamiento jurídico y la jurisprudencia antes reseñada, el T.P.I. no está limitado a considerar sólo la evidencia documental o testifical ante sí, sino también tiene el deber de considerar otros aspectos como lo son el estilo de vida del alimentante, la naturaleza de su profesión u oficio, propiedades que tenga y otras fuentes de ingresos. Arguello v. Arguello, supra.
Ciertamente, al examinar el expediente, vemos que la situación en el presente caso, según la plantea el señor Bahamundi, es inverosímil y hasta irrisoria. Veamos.
Primeramente, el negocio Emergencias 2000, Inc. que tenía con su ex - esposa, la señora Nazario, ya no está en operaciones desde marzo de 2002. Posteriormente, la madre del señor Bahamundi, la Sra. María M. Morales, incorporó un negocio con el mismo concepto de ambulancias de nombre Empresas BM, siendo ella la presidenta y única accionista.
De la Resolución del T.P.I. de la cual se recurre, mediante la cual fue acogido el informe de la Examinadora de Pensión Alimentaria, surge que el señor Bahamundi informó que su actual compañera consensual, la cual funge como tesorera de Empresas BM, recibe un sueldo de $1,250.00, y es también quien sufraga los gastos de alquiler de la vivienda donde residen. Señaló, que la guagua de carga marca Dodge del año 2005, es de uso oficial de Empresas BM. Sin embargo, el informe de la Examinadora de Pensión Alimentaria expresó que del mismo testimonio del señor Bahamundi durante la vista, surgió que aunque la referida guagua es de uso oficial es utilizada mayormente por él. Incluso testificó que la utilizó para transportarse al tribunal el día de la vista y que cuando no utiliza el vehículo de su compañera, utiliza el aludido vehículo de motor. Pudiendo concluir que el vehículo es de su uso personal.
Por otro lado, se desprende también del informe que Empresas BM posee cuatro ambulancias de las cuales sólo dos están certificadas. Esto es, que Empresas BM tiene el mismo número de ambulancias que la extinta Emergencias 2000, Inc. Además, la dirección que surge del certificado de incorporación de Empresas BM es la misma dirección donde ubicaba Emergencias 2000, Inc.
Más importante aún, el propio señor Bahamundi expresó en su alegato que trabaja en el negocio de su madre como Director de Operaciones de la Empresas BM teniendo un ingreso neto de $400 quincenal para un total de *783 $800.00 mensuales, y no empece con ello, indicó que el mismo es retenido en su totalidad por su patrono. Dicha alegación nos parece irrisoria, ya que cabe preguntarse entonces: ¿De qué vive el señor Bahamundi? ¿Cómo se mantiene?
No obstante, la Examinadora de Pensión Alimentaria, al examinar y analizar la información suministrada por el propio señor Bahamundi en su PIPE, surge que los gastos personales y pasivos sin contar la pensión del presente caso ascienden a $856.33 mensuales. Cantidad mayor a su ingreso mensual.
Además, quedó demostrado en la vista ante la Examinadora de Pensión Alimentaria que el señor Bahamundi tuvo un gasto adicional de $200.00 anual, por concepto de uniformes de trabajo que incluyó en su planilla de contribución sobre ingresos estatal, según prueba presentada por la señora Nazario, pero que omitió incluir en su PIPE. A tono con lo anterior, quedó establecido que el señor Bahamundi tiene mayores gastos que los informados al T.P.I., teniendo ingresos provenientes de una aparente economía subterránea. López v. Rodríguez, supra.
Así pues, concurrimos con el dictamen del T.P.I., al concluir que el señor Bahamundi tiene una participación activa en la Empresas BM, ya que es él quien conoce el negocio de transportación de ambulancias, y que hoy como en el pasado ha utilizado a terceras personas para la obtención de los permisos para operar sus negocios. Por lo que estamos convencidos que el señor Bahamundi recibe mayor compensación que la alegada; por tanto, tiene la capacidad económica para sufragar la pensión alimentaria de $1,180.00 impuesta por el T.P.I.
En armonía con lo resuelto en Arguello v. Arguello, supra, con relación a la apreciación de la prueba y en ausencia de error, pasión, prejuicio o parcialidad de la Resolución recurrida, no intervendremos con lo allí dispuesto.
IV
Por los fundamentos antes expuestos y de conformidad con el derecho antes reseñado, se deniega la expedición del. auto solicitado. •
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria de Tribunal de Apelaciones.
Mildred I. Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones