Versión para imprimir


EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Joy Ling Martínez De Andino Vázquez<br><br>Peticionario<br><br>v.<br><br>Ana Sonia Martínez De Andino Díaz<br><br>Recurrida | Certiorari<br><br>2012 TSPR 10<br><br>184 DPR ____ |

Número del Caso: CC-2011-123

Fecha: 18 de enero de 2012

Tribunal de Apelaciones:

      Región Judicial de Mayagüez Panel IX

Juez Ponente:

      Hon. Gretchen Coll Martí

Abogado de la Parte Peticionaria:

      Lcdo. Felix A. Toro

Abogada de la Parte Recurrida:

      Lcda. María del Carmen Gitany Alonso

Materia: Alimentos Locales

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Joy Ling Martínez De
Andino Vázquez

    Peticionario

        v.

Ana Sonia Martínez De
Andino Díaz

    Recurrida

CC-2011-123     Certiorari

Opinión del Tribunal emitida por el Juez Asociado señor Kolthoff Caraballo

San Juan, Puerto Rico, a 18 de enero de 2012.

En el presente caso nos corresponde determinar si la declaración de incapacidad física, mental o económica del padre y la madre de unos menores, que es necesaria para reclamar alimentos subsidiarios contra los abuelos, tiene que realizarse en un procedimiento judicial previo a la acción contra los abuelos. Por entender que tal determinación puede realizarse en el mismo pleito que se presente contra los abuelos, contestamos tal interrogante en la negativa.

I

La Sra. Joy Ling Martínez de Andino Vázquez (Madre Custodia) presentó una demanda el 19 de febrero de 2010, contra la abuela paterna de sus cuatro hijos menores de edad, Sra. Ana Sonia Martínez de Andino Díaz (abuela paterna), para solicitarle alimentos subsidiarios.[1] Dicha solicitud se sustentó en la alegada dificultad que esta enfrenta en el sostenimiento de sus cuatro hijos por causa de la incapacidad económica del padre y alimentante de los menores, Sr. Fernando J. Amador Martínez de Andino (Alimentante). Según la Madre Custodia, la condición de salud del Alimentante, así como la solicitud que este hiciera para el relevo total del pago de la pensión, dificulta la provisión de alimentos para sus hijos.

La Madre Custodia, entre otras cosas, arguyó además que la pensión original de $4,700.09 mensuales había disminuido a $231 semanales lo que provocó serios cambios en el modo de vida familiar. Asimismo, expresó que existía una solicitud de ejecución de hipoteca contra la residencia de los menores debido a que el Alimentante dejó de pagarla. Ello en unión a lo expuesto por la Madre Custodia sobre el hecho de que ella no trabaja y solo recibe ayuda de su padre (abuelo materno).

La abuela paterna contestó la demanda y solicitó su desestimación. Planteó que no existía causa de acción para alimentos subsidiarios toda vez que los padres de los

_____

[1] Al momento de la presentación de la demanda las edades de los menores eran las siguientes: 17, 8, 6 y 4 años de edad.

menores no han fallecido y no están incapacitados para generar ingresos. Arguyó, además, que el Alimentante paga la pensión alimentaria fijada. Cónsono con lo anterior, la abuela paterna sostuvo que el cambio en la capacidad económica de un padre alimentante no revierte la obligación del pago de pensión alimentaria a los abuelos.

La Madre Custodia, por su parte, se opuso a la solicitud de desestimación y alegó que su demanda procura la designación de una pensión suplementaria para satisfacer las necesidades de los menores, ya que la pensión original reducida no es suficiente. En respuesta a lo anterior, la abuela paterna presentó una réplica en la que reiteró su solicitud de desestimación y su posición de que la demanda de alimentos es prematura. Asimismo, recalcó que la obligación subsidiaria de proveer alimentos no debe utilizarse para suplementar los ingresos de un padre alimentante o la pensión establecida. La abuela paterna, además, se opuso a contestar un pliego de interrogatorio y a producir documentos.

Posteriormente, la Madre Custodia reaccionó a lo expuesto por la abuela paterna y señaló que esta se trajo al pleito para cubrir las necesidades de sus hijos que no pueden ser suplidas por los padres. Por consiguiente, solicitó al tribunal la celebración de una vista para que se examinaran las necesidades y las posibilidades de todas las partes en el pleito y así, adjudicar lo que corresponda.

El 10 de mayo de 2010, el tribunal llevó a cabo una vista en la que las partes presentaron sus respectivas argumentaciones orales. Luego de evaluar dichas argumentaciones, así como los escritos de las partes, el 28 de septiembre de 2010 el Tribunal de Primera Instancia notificó una resolución mediante la cual denegó la moción de desestimación. Dicho foro judicial concedió un término de diez días a la abuela paterna para contestar el descubrimiento de prueba y señaló vista en su fondo para el 29 de noviembre de 2010.

Inconforme, el 26 de octubre de 2010 la abuela paterna presentó un recurso de *certiorari* ante el Tribunal de Apelaciones. Dicho tribunal revocó la resolución del foro primario el 15 de diciembre de 2010. El Tribunal de Apelaciones concluyó que no existe una causa de acción para solicitar alimentos subsidiarios contra la abuela paterna debido a que no existía una determinación judicial previa que declarara que los obligados principales –los padres- no pueden cumplir con su obligación de alimentar. La Madre Custodia solicitó oportunamente la reconsideración de la determinación antedicha y el 25 de enero de 2011, el foro intermedio notificó la denegatoria.

Inconforme aún, el 17 de febrero de 2011 la Madre Custodia presentó oportunamente un recurso de *certiorari* en este Tribunal. En su recurso señaló que el foro apelativo intermedio erró:

> […] al revocar la resolución emitida por el Tribunal de Primera Instancia que denegó la solicitud de desestimación de la demanda en la

que se reclamó alimentos subsidiarios a la abuela paterna para sus cuatro nietos cuando surge claramente que el padre ni la madre se encuentran aptos para prestar alimentos adecuados a los cuatro menores.

[…] al denegar la solicitud de reconsideración planteada por la peticionaria a pesar de los nuevos argumentos y evidencia documental que se le supliera en apoyo de la solicitud.

[…] al disponer la expedición del auto de Certiorari solicitado por la recurrida y ordenar la desestimación de la demanda sin conceder al Tribunal de [Primera] Instancia la oportunidad de recibir la prueba de las partes en violación a lo que postula la Regla 39.2(c) de Procedimiento Civil y lo resuelto en Soto López v. Colón, 143 D.P.R. 282.[2]

El 3 de junio de 2011 expedimos el recurso. La peticionaria y la recurrida presentaron sus respectivos alegatos. Así, pues, con el beneficio de ambas comparecencias, procedemos a resolver el recurso.

## II

Para analizar en su justa perspectiva la controversia aquí trabada, pasemos a examinar la naturaleza y obligación de los abuelos de alimentar a sus nietos.

### A.

De entrada, es importante señalar que los padres son los llamados en primera instancia a proveer alimentos a sus hijos. Dicha obligación está consagrada en los Arts. 118 y 153 del Código Civil de Puerto Rico.[3] El Art. 153 dispone expresamente que tanto el padre como la madre tienen, respecto a sus hijos no emancipados, "el deber de

---

[2] Petición de Certiorari, pág. 6.

[3] 31 L.P.R.A. secs. 466 y 601.

alimentarlos… [y] educarlos e instruirlos con arreglo de su fortuna…". Además, esa obligación es indivisible y aplicable a ambos padres. Incluso, el derecho de los hijos a recibir alimentos no se extingue por razón del divorcio de sus padres. Ello porque "la obligación de prestar alimentos subsiste conjuntamente sobre el padre y la madre aun después del divorcio".[4] De igual forma, al interpretar en lo pertinente el Art. 1308 del Código Civil,[5] hemos señalado que la obligación de prestar alimentos podría recaer sobre la nueva sociedad de gananciales que cualquiera de los padres haya constituido por haberse casado nuevamente.[6] Claro está, los alimentos a los que se refiere el artículo anterior son los dispuestos en el Art. 153 del Código Civil, que opera mientras los hijos son menores de edad, ya que si el hijo es mayor de edad el artículo aplicable es el 143 de dicho Código.

Precisamente, de los Arts. 143 y 144 del Código Civil[7] es que surge la obligación legal de los abuelos de alimentar a sus nietos. Sin embargo, dicha obligación es de naturaleza subsidiaria.[8] En otras palabras, la obligación "surge cuando los padres no pueden proveerles a sus hijos los alimentos, ya sea porque están física o mentalmente

---

[4] Vega v. Vega Oliver, 85 D.P.R. 675, 679 (1962). Véase, Art. 108 del Código Civil, 31 L.P.R.A. sec. 384.

[5] 31 L.P.R.A. sec. 3661.

[6] Vega v. Vega Oliver, supra, págs. 679-682.

[7] 31 L.P.R.A. secs. 562 y 563.

[8] Piñero Crespo v. Gordillo Gil, 122 D.P.R. 246, 252-253 (1988); Vega v. Vega Oliver, supra, pág. 682.

incapacitados para hacerlo o porque no cuentan con suficientes recursos económicos para cumplir con su obligación".[9] La obligación de los abuelos puede surgir, tanto cuando los padres no puedan suplir las necesidades alimentarias de sus hijos en su totalidad como cuando solo puedan cubrirlas parcialmente.[10] En los casos en los que la obligación se circunscriba a los abuelos, conforme a las disposiciones citadas, esta incluye tanto a los paternos como a los maternos.[11]

Así, en la demanda que se presente contra los abuelos es necesario acreditar que los padres –llamados preferentemente a la prestación alimentaria- carecen de los medios suficientes para sufragarlos.[12] Además, se debe establecer que en la situación de que alguno de los padres hubiese contraído matrimonio nuevamente bajo el régimen de sociedad de gananciales, la nueva sociedad carece de bienes suficientes para sufragar la obligación alimentaria.

B

Cuando los abuelos –maternos o paternos- vienen obligados a asumir la obligación alimentaria, la naturaleza de esa obligación está determinada por el Art. 145 del Código Civil. Dicho artículo dispone la norma general de

---

[9] Piñero Crespo v. Gordillo Gil, *supra*, pág. 253; Vega v. Vega Oliver, *supra*.

[10] S. Torres Peralta, La Ley de Sustento de Menores y el Derecho Alimentario en Puerto Rico, San Juan, Publicaciones STP, 2006-2007, T. 1, pág. 5.60. Véanse además, Piñero Crespo v. Gordillo Gil, *supra*; Vega v. Vega Oliver, *supra*.

[11] Piñero Crespo v. Gordillo Gil, *supra.*

[12] Vega v. Vega Oliver, *supra*, pág. 682.

que en los casos en los que la obligación de dar alimentos recae sobre dos o más personas, el pago de la pensión se dividirá entre cada uno de ellos en proporción a sus respectivos caudales. Es decir, cuando dos o más personas están obligadas a dar alimentos (ya sean hermanos, abuelos, etc.) la misma será de naturaleza mancomunada, ya que cada persona será responsable sólo de la porción de la deuda que se le fijó en proporción a su caudal.[13]

Como excepción, el Art. 145 del Código Civil establece que en situaciones de urgente necesidad o por circunstancias especiales, el tribunal podrá imponer provisionalmente, a solo uno de los obligados, el pago total de la deuda, siempre y cuando cuente con suficientes medios para satisfacerla, y sin menoscabar su derecho a reclamar de los demás la proporción de la deuda que le corresponda. Evidentemente, en estas situaciones la obligación se convierte en solidaria. Por ello, en dichas circunstancias "la reclamación puede dirigirse contra cualquiera de los obligados por la totalidad de la deuda".[14] En ese proceso, los tribunales serán los que determinen lo que constituye una situación de urgente necesidad o circunstancias especiales en cada caso.[15]

### C.

Los artículos del Código Civil que hemos citado no establecen cómo se llevarán a cabo los procedimientos de

---

[13] Piñero Crespo v. Gordillo Gil, *supra*, pág. 253.

[14] Íd., pág. 255.

[15] Íd.

reclamación de alimentos contra los abuelos. Sin embargo, en Piñero Crespo v. Gordillo Gil, 122 D.P.R. 246, 256 (1988) resolvimos que, a base de la naturaleza de la obligación en la que concurren varios obligados, la reclamación de alimentos puede dirigirse contra solo uno de estos para reclamarle la porción de la deuda que le corresponde. Es decir, los otros obligados no son partes indispensables en la reclamación. Por ende, no existe impedimento alguno para que se pueda presentar un pleito contra un solo abuelo. No obstante, añadimos que,

> [s]i los abuelos demandados entienden que se les está reclamando una suma en exceso a lo que debe ser su obligación, deberán entonces reclamar a los demás obligados mediante demanda contra tercero o, si ya ha recaído sentencia, recurriendo en alzada o mediante los remedios postsentencia que proveen las Reglas de Procedimiento Civil.
>
> De conformidad con el primer párrafo del Art. 145, *supra*, una vez el tribunal determine que hay varios obligados y que pueden contribuir a la obligación de proveer alimentos, el pago de la deuda deberá repartirse necesariamente entre los obligados. Para ello el demandado deberá colocar al tribunal en condiciones de poder adjudicar la responsabilidad de los demás presuntos obligados, incluyéndolos en el pleito mediante los mecanismos procesales apropiados. El demandado podrá, además, levantar el asunto como una defensa afirmativa.[16]

Al reiterar la norma de que se puede presentar una reclamación contra un solo abuelo, en Piñero Crespo v. Gordillo Gil, *supra*, citamos con aprobación nuestra decisión de Vega v. Vega Oliver, 85 D.P.R. 675 (1962), en la que le impusimos una obligación alimentaria a un padre y

---

[16] Íd., págs. 256-257.

a un abuelo paterno, conforme a sus respectivas capacidades económicas, sin que los abuelos maternos fueran parte en el pleito.[17]

Ahora bien, ¿la declaración de incapacidad física, mental o económica de los padres de los menores, que es necesaria para reclamar alimentos subsidiarios contra los abuelos, tiene que realizarse en un procedimiento judicial previo a la acción contra los abuelos? La respuesta es en la negativa.

A primera vista, el trasfondo fáctico del caso normativo de Vega v. Vega Oliver, *supra*, nos brinda mayor claridad para la decisión antedicha. En esa ocasión, la madre con patria potestad de una menor inició una acción en representación de su hija para que se le ordenara a su padre, o en su defecto a su abuelo paterno, satisfacer una pensión alimentaria de $150 mensuales. La madre alegaba que la pensión era necesaria para cubrir los gastos de mantenimiento y educación de la menor, y sería adicional a la ayuda limitada que los abuelos maternos pudieran prestarle. El padre alegó que sus ingresos no le permitían pagar la referida pensión. Por su parte, el abuelo paterno adujo, entre otras cosas, que la prestación de los alimentos reclamados le correspondían al padre de la menor y que este no adolecía de ninguna incapacidad ni impedimento que le excusara de su obligación. El Tribunal de Primera Instancia, luego de celebrar la vista

---

[17] Íd., pág. 256.

correspondiente y evaluar la capacidad económica de ambos demandados, fijó la pensión mensual solicitada y condenó a pagar $60 al padre y $90 al abuelo. Este Tribunal confirmó dicha decisión.

De lo anterior podemos entonces colegir que se instó una reclamación de alimentos contra un abuelo sin la necesidad de una determinación judicial previa de incapacidad de alguno de los padres. Más bien, en el caso antedicho la determinación se realizó en el mismo pleito de solicitud de alimentos. En ese caso, como la capacidad económica del padre no le permitía sufragar la pensión en su totalidad, y el abuelo paterno tenía capacidad económica para suplirla, se le ordenó el pago de la pensión restante.

Por otro lado, como es sabido, el derecho a reclamar alimentos es uno fundamental "que se acentúa cuando están involucrados los alimentos de menores y que forma parte del poder de *parens patriae* del Estado".[18] Este derecho tiene profundas raíces constitucionales que provienen del derecho a la vida.[19] Por consiguiente, los casos de alimentos están revestidos del más alto interés público, el cual no puede ser otro que el interés de procurar el mejor bienestar del menor.[20]

---

[18] Toro Sotomayor v. Colón Cruz, 176 D.P.R. 528, 535 (2009).

[19] Íd.; Torres Rodríguez v. Carrasquillo Nieves, 177 D.P.R. 728, 738 (2009); Figueroa Robledo v. Rivera Rosa, 149 D.P.R. 565, 572 (1999). Véase Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Tomo 1.

[20] Toro Sotomayor v. Colón Cruz, *supra*; Torres Rodríguez v. Carrasquillo Nieves, *supra*.

El alto interés público que cobija el derecho de un menor a reclamar alimentos es tal, que "el Estado, como parte de su política pública, ha legislado ampliamente para velar por su cumplimiento".[21] Muestra de ello es la Ley Núm. 5 de 30 de diciembre de 1986, según enmendada, conocida como Ley Orgánica de la Administración para el Sustento de Menores[22], con la que el Estado creó un procedimiento judicial expedito que brinda protección al mejor interés y bienestar del menor por medio de trámites rápidos y eficientes de fijación, modificación y cobro de pensiones alimentarias.[23] Es decir, el interés del Estado es que siempre los procesos de alimentos sean los más convenientes al bienestar de los menores desde el punto de vista de la rapidez y la economía en el trámite.

Aunque la reclamación alimentaria dirigida a los abuelos podría presentarse dentro del mismo caso de alimentos instado contra la madre o el padre no custodio, nada impide que dicha reclamación se presente en un procedimiento separado o independiente.[24] Ello porque la necesidad de alimentos de los menores y la imposibilidad de los padres en proveerlos, pueden surgir luego de culminado el primer procedimiento, entre otras circunstancias.

Como ya hemos expuesto, la obligación de los abuelos para alimentar a sus nietos es subsidiaria y le corresponde

---

[21] Torres Rodríguez v. Carrasquillo Nieves, *supra*, pág. 739; Martínez v. Rodríguez, 160 D.P.R. 145 (2003).

[22] 8 L.P.R.A. sec. 501 *et seq.*

[23] Torres Rodríguez v. Carrasquillo Nieves, *supra*, pág. 739.

[24] Torres Peralta, op. cit., pág. 5.67.

a quien solicita los alimentos demostrar que los padres y las nuevas sociedades legales de gananciales, de estas existir, no pueden proveer los alimentos necesarios en su totalidad. No obstante, aunque la obligación de los abuelos es subsidiaria, esta será contingente a que en el pleito se demuestre la incapacidad mental o física de los padres o la incapacidad de estos para poder sufragar los alimentos. Es decir, dicha demostración puede realizarse en el mismo proceso contra los abuelos.

Sostener lo contrario le impondría una carga onerosa a la madre o al padre con la custodia, quien es la persona que de ordinario presenta la reclamación de alimentos subsidiarios en representación de sus hijos menores de edad. Asimismo, atentaría contra el alto interés público que cubre los procesos de alimentos de menores, así como contra la economía procesal promovida por nuestro sistema.[25] De igual forma, en la medida en que la reclamación de alimentos subsidiarios tendrá el efecto de imponer a los abuelos una obligación de alimentar, estos deben estar presentes cuando el padre o la madre justifiquen su incapacidad para satisfacer las necesidades de los menores. Sin embargo, siempre que se intente traer a los abuelos a un pleito de alimentos o se inste uno independiente, los tribunales deben tener presente la norma esencial de que los procedimientos de alimentos deben tramitarse con la

---

[25] Véase Regla 1 de Procedimiento Civil, 32 L.P.R.A. Ap. V.

debida rapidez.[26] Por consiguiente, bifurcar los procedimientos judiciales no es cónsono con dicha normativa.

III

En el caso de autos, el Tribunal de Primera Instancia, luego de evaluar los reclamos de las partes, entendió que no procedía que se desestimara la causa de acción presentada contra la abuela materna. No obstante, el Tribunal de Apelaciones determinó que procedía la desestimación del caso porque no había una determinación judicial previa que estableciera que los padres están incapacitados para cumplir con su responsabilidad de alimentar a sus hijos menores. De esa forma, como no existe dicha determinación, el foro apelativo consideró que no se había activado la acción subsidiaria contra los abuelos.

La Madre Custodia alega que el Tribunal de Apelaciones se equivocó al revocar al Tribunal de Primera Instancia y desestimar la reclamación de alimentos contra la abuela paterna. Además, argumenta que la información provista en el proceso judicial es base suficiente para que se permita la celebración de una vista en los méritos para determinar la capacidad económica de los padres y, así, determinar si procede la pensión alimentaria subsidiaria. Precisamente, esa fue la decisión del Tribunal de Primera Instancia y que el foro apelativo intermedio revocó. Consideramos que la Madre Custodia tiene razón. Es evidente que la decisión del foro primario fue una informada. Dicho

---

[26] Piñero Crespo v. Gordillo Gil, *supra*, pág. 257.

foro contó con el beneficio de los escritos y las argumentaciones orales de las partes. De esa forma, con el insumo de lo anterior, el Tribunal de Primera Instancia decidió continuar con el proceso judicial.

Así, pues, luego de analizar cuidadosamente el expediente y el Derecho expuesto, consideramos que la actuación del foro primario fue acertada. Por consiguiente, el Tribunal de Apelaciones erró al revocar la decisión del Tribunal de Primera Instancia. Ciertamente la determinación de incapacidad de unos padres para generar ingresos puede realizarse dentro del mismo pleito en el que se le solicite alimentos a un abuelo.

IV.

En armonía con lo antes señalado, se revoca la Resolución del Tribunal de Apelaciones, Región Judicial de Mayagüez, y se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Mayagüez, para la continuación de los procedimientos.

Se dictará Sentencia de conformidad.

Erick V. Kolthoff Caraballo<br>Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Joy Ling Martínez De
Andino Vázquez

    Peticionario

          v.

Ana Sonia Martínez De
Andino Díaz

    Recurrida

CC-2011-123       Certiorari

**SENTENCIA**

San Juan, Puerto Rico, a 18 de enero de 2012.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la Resolución del Tribunal de Apelaciones, Región Judicial de Mayagüez, y se devuelve el caso al Tribunal de Primera Instancia, Sala Superior de Mayagüez, para la continuación de los procedimientos.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Jueza Asociada señora Pabón Charneco disiente sin opinión escrita.

                    Aida Ileana Oquendo Graulau
                  Secretaria del Tribunal Supremo