Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| CYNTHIA A MATOSANTOS LEWIS<br><br>Apelante<br><br>V.<br><br>FEDERICO CARDONA FIRPI<br><br>Apelado | KLAN202300413 | Apelación procedente del Tribunal de Primera Instancia Sala de Superior de Bayamón<br><br>Caso Núm.:<br>BY2020RF01826<br><br>Sobre:<br>Divorcio |

Panel integrado por su presidente, el Juez Rodríguez Casillas, la Jueza Mateu Meléndez y el Juez Marrero Guerrero

Marrero Guerrero, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de mayo de 2024.

Comparece la Sra. Cynthia A. Matosantos Lewis (en adelante, señora Matosantos Lewis o la apelante) mediante recurso de *Apelación* en el que nos solicita que revisemos dos *Resoluciones* emitidas por el Tribunal de Primera Instancia, Sala Superior de Bayamón (TPI).[1] En concreto, se requiere la revisión de una *Resolución* dictada y notificada el 19 de enero de 2023, en la que se estableció la pensión alimentaria a favor del menor S.A.C.M., procreado entre la apelante y el Sr. Federico Cardona Firpi (en adelante, señor Cardona Firpi o apelado).[2] La otra *Resolución* que se nos solicita que revisemos, con fecha de 4 de abril de 2023, modificó la *Resolución* emitida el 19 de enero de 2023, lo que resultó en una reducción en la cantidad que debe sufragar el apelado por concepto de pensión alimentaria.[3]

---

[1] El recurso de epígrafe fue presentado adecuadamente como apelación, ya que, según lo resuelto en los casos *Cortés Pagán v. González Colón*, 184 DPR 807 (2012) y *Figueroa v. Del Rosario*, 147 DPR 121 (1998), las resoluciones sobre alimentos son revisables por este tribunal mediante recurso de *Apelación*.
[2] Apéndice de la *Apelación* de la señora Matosantos Lewis, págs. 1134-1137.
[3] *Íd.*, págs. 1168-1169. Archivada y notificada en autos el 4 de abril de 2023.

Tras evaluar el expediente ante nuestra consideración, *modificamos* el dictamen apelado. Explicamos.

**-I-**

El presente caso tuvo su génesis el 27 de noviembre de 2020, cuando la apelante presentó, en contra del apelado, una *Demanda* de divorcio, custodia, patria potestad y alimentos para beneficio del menor S.A.C.M.[4] Luego de diversos trámites, el 26 de enero de 2021, el TPI emitió una *Sentencia* en la que disolvió el matrimonio entre las partes.[5] Entre otras disposiciones, mantuvo provisionalmente la custodia del menor a la apelante; determinó que la patria potestad sería compartida entre ambos progenitores; refirió el caso a la Unidad Social con el propósito de obtener un estudio sobre la custodia y las relaciones filiares; y reiteró la programación de una vista ante una Examinadora de Pensiones Alimentarias (en adelante, la Examinadora) para el 1 de febrero de 2021.

En consecuencia, el 1 de febrero de 2021, el apelado, en su *Oposición a "Moción Informativa y Solicitud de Cara a Señalamiento"* indicó, entre otras cosas, que estaría haciendo alegación de capacidad económica ante la Examinadora.[6] Por su parte, el foro primario emitió una *Orden* en la que determinó que, dado a que el señor Cardona Firpi no había descubierto prueba, se presume su capacidad económica.[7] Como resultado, lo eximió de contestar la solicitud de descubrimiento de prueba por parte de la apelante.

Así las cosas, se llevaron a cabo múltiples vistas sobre fijación de pensión alimentaria ante la Examinadora Janet Soltero Lugo en las siguientes fechas: 9 y 10 de septiembre de 2021; 6, 13 y 20 de octubre de 2021; 2 y 15 de noviembre de 2021; 9 de diciembre de 2021; 1, 11 y 14 de febrero de 2022; 25 de marzo de 2022; 11 de

---

[4] *Íd.*, págs. 1-6.
[5] *Íd.*, págs. 44-47.
[6] *Íd.*, págs. 76-78.
[7] *Íd.*, pág. 80.

abril de 2022; 2 y 9 de mayo de 2022. Finalmente, el 22 de diciembre de 2022, la Examinadora presentó su *Informe de la Examinadora de Pensión Alimenticia* para la consideración del TPI.[8]

El 19 de enero de 2023, el foro primario emitió una *Resolución* en la que acogió las recomendaciones contenidas en el informe de la Examinadora.[9] Por lo tanto, impuso al señor Cardona Firpi la obligación de satisfacer las siguientes pensiones alimentarias según los períodos de tiempo que se indican: (1) $9,314.35 mensuales desde el 27 de noviembre de 2020 hasta diciembre de 2021; y (2) $5,268.10 mensuales a partir de enero de 2022.

Además, el señor Cardona Firpi deberá asumir: (1) el 50% del costo de mantenimiento de la vivienda, servicios de handyman y limpieza de los aires acondicionados; (2) el costo total de los regalos para los cumpleaños a los que el menor haya sido invitado, hasta un máximo de $80.00 por regalo; (3) los pasajes del menor en *Business Class* hasta un máximo de cuatro (4) viajes al año, así como las entradas del menor a parques, zoológicos, acuarios y museos, durante esos viajes; (4) el porciento correspondiente de los gastos del menor en alojamiento y transporte durante cada viaje, hasta un máximo de catorce (14) días por viaje, a un costo máximo de habitacion de $843.00 por noche; (5) hasta $10,000.00 anuales para los gastos relacionados con el cumpleaños del menor; y (6) a partir de agosto de 2022, el 100% de los gastos escolares del menor.[10]

Por otro lado, el TPI ordenó al señor Cardona Firpi asumir directamente los siguientes gastos del menor: (1) los servicios de internet para su tableta; (2) los servicios de barbería; (3) la leche Elecare; (4) las sesiones de terapias del habla, según lo recomendado

---

[8] *Íd.*, págs. 1089-1133.
[9] *Íd.*, págs. 1134-1137. Cabe resaltar que, la resolución fue notificada como sentencia, en cumplimiento con lo establecido en *Figueroa v. Del Rosario*, 147 DPR 121 (1998).
[10] *Íd.*

por la terapista; y (5) las sesiones de terapia ocupacional, conforme la recomendación de la terapista. Asimismo, deberá cubrir los siguientes gastos del menor de forma directa o mediante reembolso: (1) los deducibles médicos; (2) las visitas o consultas médicas; (3) los medicamentos; (4) los análsis de laboratorios; (5) los gastos escolares (homeschooling) durante 10 meses; (6) el campamento de verano; (7) las clases de natación; (8) las clases de fútbol (soccer); (9) y el equipo necesario para jugar al fútbol.[11]

El 6 de febrero de 2023, la señora Matosantos Lewis presentó una *Solicitud de Reconsideración* en la que cuestionó la cuantía asignada para los siguientes conceptos: (1) alimentos en el hogar; (2) alimentos fuera del hogar; (3) ropa; (4) entretenimientos; y (5) regalos de cumpleaños y Navidad.[12] En específico, argumentó que las cantidades establecidas no concuerdan con el estilo de vida del menor, como se demostró con prueba circunstancial. Afirmó que se realizó un cálculo matemático exacto basado en la prueba documental provista y no se consideró el testimonio o la evidencia circunstancial permitida en los casos sobre capacidad económica.

En la misma fecha, el apelado presentó una *Moción para que se Corrijan Errores de Cómputo, Determinaciones de Hechos y Reconsideración.*[13] En esencia, señaló que: (1) la Examinadora cometió errores en el cómputo de varias partidas, incluyendo las relacionadas con juguetes, artículos del hogar, limpieza y cuidado personal; (2) el tribunal erró al adjudicar una partida de $30.00 mensuales para lavandería, sin prueba que lo sustente; (4) no existe base para incluir el gasto de mascota como parte de la pensión alimentaria de su hijo; (5) no se demostró el gasto real y razonable en los regalos de cumpleaños del menor; (6) la recomendación de

---

[11] *Íd.*
[12] *Íd.*, págs. 1138-1146.
[13] *Íd.*, págs. 1147-1156.

imponerle el pago de cuatro (4) viajes para el menor es irrazonable y contraria a derecho. En consecuencia, sostuvo que las partidas que no fueron respaldas por prueba deben ser eliminadas y las demás deben ajustarse conforme a la prueba y razonabilidad de los gastos. Respecto al costo de los viajes, propuso sufragar dos (2) viajes al año con la señora Matosantos Lewis y tener la oportunidad de viajar con el menor durante sus períodos de relaciones filiales.

El 9 de febrero de 2023, el tribunal de instancia refirió las solicitudes de reconsideración presentadas por ambas partes a la Examinadora.[14] Como resultado de este proceso, el 4 de abril de 2023, la Examinadora presentó un *Acta de la Examinadora de Pensión Alimenticia.*[15]

El 4 de abril de 2023, el TPI emitió una *Resolución* en la que acogió las recomendaciones contenidas el acta de la Examinadora.[16] Por consiguiente, declaró no ha lugar la solicitud de reconsideración presentada por la señora Matosantos Lewis. Sin embargo, declaró ha lugar la moción de reconsideración presentada por el señor Cardona Firpi, únicamente en cuanto a las partidas de artículos del hogar y limpieza, así como juguetes, conforme al análisis realizado por la Examinadora. En consecuencia, declaró no ha lugar los demás planteamientos del apelado y modificó la pensión alimenticia que debía sufragar el señor Cardona Firpi a $9,291.56 mensuales, para el período del 27 de noviembre de 2020 hasta diciembre de 2021, y $5,245.31 mensuales a partir de enero de 2022, para beneficio del menor S.A.C.M. Por último, ordenó mantener las demás partidas conforme a la *Resolución* emitida el 19 de enero de 2023.

---

[14] *Íd.*, págs. 1157 y 1158.
[15] *Íd.*, págs. 1159-1167.
[16] *Íd.*, págs. 1168-1169. Archivada y notificada en autos el 4 de abril de 2023.

Inconforme con la decisión, la apelante acudió ante nosotros mediante el recurso que nos ocupa y le imputó al foro primario la comisión de los siguientes errores:

1. Erró el TPI al haber excluido como evidencia prueba documental relativa a la compra de alimentos fuera del hogar y ropa del menor, a pesar de haberse sentado las bases sobre cómo se autentica la prueba electrónica.

2. Erró el TPI al utilizar como pago de renta de la propiedad una cuantía propuesta por el alimentante sobre la cual no se desfiló prueba alguna.

3. Erró el TPI al hacer determinaciones sobre los gastos básicos del menor, de forma contradictoria al estilo de vida probado sobre los demás gastos de éste.

4. Erró el TPI, al calcular los gastos de comida en el hogar y fuera del hogar como si fuera un ejercicio matemático exacto, estableciendo la cuantía únicamente de acuerdo a los recibos de compras presentados a pesar de la apelante haber establecido que no contaba con la totalidad de la prueba.

5. Erró el TPI al imponerle a la madre custodia el pago de una porción de los gastos de éste, a pesar de ser gastos producto del opulento estilo de vida al que el apelado lo tenía acostumbrado.

Para sustentar su posición, la apelante afirmó que a través de su testimonio presentó suficiente evidencia circunstancial para autenticar las copias de estados de cuenta de una tarjeta de crédito que fueron excluidas. Explicó que testificó que no conservaba la mayoría de los recibos para demostrar el estilo de vida del menor, ya que era el apelado quien pagaba el 100% de los gastos y no solía guardar los recibos. Sostuvo que los estados de cuenta electrónicos presentados constituían la mejor evidencia para demostrar el estilo de vida del menor y la familia durante el matrimonio, por lo que la exclusión de estos documentos afectó los gastos básicos del menor para la compra de alimentos dentro y fuera del hogar, así como la adquisición de ropa a la que estaba acostumbrado. Agregó que de haberse admitido los documentos, las cuantías establecidas habrían sido mayores. También subrayó que declaró con detalle cómo obtuvo los documentos electrónicamente, los cuales aseguró tienen sus distintivos como fechas, números de cuenta y logotipos que los identifican como prueba auténtica.

Asimismo, alegó que durante las vistas de pensión alimentaria presentó testimonio consistente en que el alquiler del apartamento donde vive el menor oscila entre de $7,500 a $8,000 mensuales. Precisó que también intentó presentar prueba documental que fue excluida por la Examinadora al considerar que no estaba autenticada. Afirmó que la Examinadora estableció la cuantía de $2,500.00 como la cantidad base de la vivienda, asignando al menor la mitad de esta cantidad. No obstante, para ello, la Examinadora tomó en cuenta una determinación interlocutoria realizada por la Honorable Jueza Marta Dávila Torres en la vista del 9 de diciembre de 2021. Relató que dicha decisión interlocutoria no fue producto de una vista evidenciaria, sino que fue el resultado de meras alegaciones por parte del apelado en cuanto a la renta que alega pagarle a su madre. Manifestó que el TPI ni la Examinadora podían utilizar como prueba las meras alegaciones del apelado sobre el arrendamiento de la propiedad donde vive el menor.

Por otro lado, argumentó que la Examinadora determinó algunos gastos de acuerdo con el verdadero estilo de vida del menor, mientras que otros fueron calculados mediante un riguroso ejercicio matemático basado únicamente en la prueba documental admitida, descartando el resto de la evidencia indirecta y circunstancial presentada y permitida en casos de capacidad económica. Subrayó que, a pesar de haber probado el lujoso estilo de vida del menor, el TPI inexplicablemente no aplicó dicho estándar a todos sus gastos. Especificó que el foro de instancia reconoció que el menor tenía derecho a incurrir en gastos lujosos para actividades como cumpleaños o viajes, pero no para sus necesidades básicas como vivienda, alimentos dentro y fuera del hogar, ropa, entretenimientos y regalos de Navidad.

Por último, resaltó que el TPI asignó a la apelante el 50% de los gastos de vivienda del menor, incluyendo la cuota de

mantenimiento, seguro de vivienda y CRIM, así como los gastos de empleada doméstica. Argumentó que estos gastos responden al estilo de vida proporcionado por el apelado a su hijo, lo que significa que exigir que la apelante cubra el 50% de los mismos impediría que el menor mantenga el estilo de vida al que está acostumbrado. Afirmó que esta asignación del 50% va en contra de la doctrina establecida en casos donde una de las partes acepta capacidad económica. En ese sentido, sostuvo que lo correcto sería adjudicarle el 100% de dichos gastos al señor Cardona Firpi, según lo determinado en *Santiago, Maisonet v. Maisonet Correa*,187 DPR 550 (2012), ya que fue el apelado quien aceptó capacidad económica. En efecto, arguyó que no tuvo participación en esa determinación, por lo que sería contrario a derecho adjudicarle responsabilidad de pago.

En respuesta, el señor Cardona Firpi alegó que el primer error no se cometió. Sostuvo que la Examinadora resolvió conforme a derecho al excluir los estados de cuenta de tarjetas de crédito a nombre del apelado, ya que los documentos no fueron autenticados conforme establecen las Reglas de Evidencia y estaban dirigidos a aportar prueba inadmisible sobre la capacidad e ingresos del apelado y no sobre los gastos del menor.

Sobre el segundo error, en esencia, planteó que no fue cometido debido a que: (1) el 17 de febrero de 2020, el tribunal de instancia determinó que el apelado continuara pagando $2,500.00 de alquiler por el apartamento como pensión provisional, y esta cantidad no fue impugnada por la apelante; (2) el 30 de enero de 2021, cuando el apelado cuestionó el gasto de alquiler propuesto por la apelante en su intento de mudarse, presentó como evidencia el contrato de arrendamiento que establece el monto de $2,500.00 por el apartamento donde reside el menor desde su nacimiento; (3) el asunto sobre el valor de la vivienda que la Examinadora debía considerar para fijar la pensión alimentaria fue resuelto por el TPI y

adjudicado en sus méritos mediante orden del 1 de febrero de 2021, posteriormente sostenido en una resolución final y firme; y (4) la Examinadora carece de discreción para alterar un dictamen final y firme del TPI.

En cuanto al tercer y cuarto error, el apelado argumentó que la Examinadora realizó la recomendación sobre la pensión alimentaria tras analizar la prueba que desfiló, la credibilidad que le merecieron los testimonios, las necesidades del menor y el criterio de razonabilidad. Agregó que, durante el proceso judicial, la apelante afirmó que contaba con evidencia para respaldar las partidas exorbitantes reclamadas en la Planilla de Información Personal y Económica (PIPE). Sin embargo, según lo expuesto por el apelado ante el tribunal, una revisión superficial de las cantidades reclamadas por la apelante durante las vistas reveló que estas no reflejaban los gastos reales del menor. Alegó, además, que la admisión por parte del apelado de su capacidad económica no implica automáticamente la aceptación de todas las partidas y montos reclamados por la apelante, especialmente si estos no están respaldados por la realidad documentada y los gastos justos y razonables del menor.

Por otra parte, subrayó que el último señalamiento de error es frívolo, temerario y no amerita discusión, ya que es contrario a derecho. Resaltó que se trata de un asunto resuelto hace más de una década por nuestro alto foro judicial. Específicamente, sostuvo que el caso que la apelante cita de *Santiago, Maisonet v. Maisonet Correa,* supra, contradice su argumento y solicitud. Explicó que un alimentante que acepta capacidad económica tiene la obligación de pagar el 100% de los gastos razonables de los menores. Agregó que la cantidad fijada por el TPI así lo sostuvo cuando ordenó al apelado a pagar el 100% de los gastos que corresponden y pertenecen al menor. Sin embargo, la apelante busca que el apelado asuma el

100% de gastos que también le corresponde a ella, como la mitad de la propiedad inmueble, sus propios alimentos, los gastos del hogar, entre otros. Manifestó que la alegación de capacidad económica por parte del apelado no implica la obligación de pagar los gastos de la apelante, como erróneamente argumenta y solicita, sin un fundamento legal adecuado.

Con el beneficio de la comparecencia de las partes, procedemos a discutir las normas jurídicas aplicables a este recurso.

**-II-**

**-A-**

La obligación de los padres y madres de alimentar a sus hijos e hijas menores de edad es parte del derecho a la vida consagrado en la Sec. 7 del Artículo II de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo I. *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016). Por lo tanto, los casos sobre alimentos de menores de edad están revestidos del más alto interés público, siendo el interés principal el bienestar del menor. *Santiago, Maisonet v. Maisonet Correa,* 187 DPR 550, 559 (2012). Además, esta obligación emana de la relación paterna filial y existe desde que la paternidad o maternidad quedan establecidas. *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623, 632-633 (2011).

En específico, las madres y los padres tienen el deber de alimentar a sus hijos no emancipados, tenerlos en su compañía y educarlos según su fortuna. *Santiago, Maisonet v. Maisonet Correa*, supra, pág. 560; *López v. Rodríguez,* 121 DPR 23, 29 (1988), citando a *Vega v. Vega Oliver*, 85 DPR 675, 679 (1962); Art. 590 del nuevo Código Civil de 2020, 31 LPRA sec. 7242.[17]

---

[17] Antes recogidos en el Art. 153 del derogado Código Civil de 1930, el Art. 590 del vigente Código Civil de 2020 dispone lo siguiente en torno a estos deberes:

> Los progenitores tienen sobre el hijo sujeto a su patria potestad los siguientes deberes y facultades:

Precisamente, la obligación general de proveer alimentos entre parientes está recogida en los artículos 658 a 664 del Código Civil vigente. 31 LPRA secs. 7531-7582. Los alimentos comprenden "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia", así como, cuando es menor de edad, la "educación, las atenciones de previsión acomodadas a los usos y a las circunstancias de su entorno familiar y social y los gastos extraordinarios para la atención de sus condiciones personales especiales". Cód. Civil P.R., Art. 653, 31 LPRA sec. 7531.

Cabe resaltar que, el derecho de los hijos e hijas a recibir alimentos subsiste a pesar del divorcio de los padres. *Martínez de Andino v. Martínez de Andino*, 184 DPR 379, 385 (2012). Una vez roto el vínculo matrimonial entre estos, la pensión alimentaria se reparte entre los progenitores en proporción a su capacidad económica. *Argüello v. Argüello*, 155 DPR 62, 72 (2001); Cód. Civil P.R., Art. 663, 31 LPRA sec. 7546. En este sentido, el Tribunal Supremo ha establecido que el artículo 143 del Código Civil de 1930 —cuyo contenido recoge el artículo 658 del Código Civil vigente— regula la obligación alimentaria de los progenitores en cuanto a los "hijos no emancipados que no viven en su compañía y sobre los cuales no tienen la patria potestad, y a hijos y otros parientes, no importa su edad, que tengan necesidad de alimentos, y siempre que el alimentante cuente con recursos para proveerlos". 31 LPRA sec. 7541; *Guadalupe Viera v. Morell*, 115 DPR 4, 11–13 (1983). De este

---

**(a) velar por él y tenerlo en su compañía;**
**(b) alimentarlo y proveerle lo necesario para su desarrollo y formación integral;**
(c) inculcarle valores y buenos hábitos de convivencia y el respeto a sí mismo y hacia los demás;
(d) corregirlo y disciplinarlo según su edad y madurez intelectual y emocional y castigarlo moderadamente o de una manera razonable; y
(e) representarlo en el ejercicio de las acciones que puedan redundar en su provecho y en aquellas en las que comparece como demandado. 31 LPRA 7242.

precepto surge, la obligación del progenitor no custodio de pagar una pensión alimentaria para cubrir las necesidades de los hijos e hijas que están bajo la custodia del otro progenitor, según su capacidad económica real.

**-B-**

El Art. 5 de la Ley Núm. 5 de 30 de diciembre de 1986, conocida como la *Ley Orgánica de la Administración para el Sustento de Menores*, 8 LPRA sec. 504, dispone la creación de la ASUME, adscrita al Departamento de la Familia, la cual establece la política pública de proveer para que los padres o las personas legalmente obligadas asuman la responsabilidad que tienen para con sus hijos. *Martínez v. Rodríguez*, 160 DPR 145, 153 (2003); Exposición de Motivos de la Ley Núm. 5, *supra*, pág. 750.

En el ámbito de los procedimientos legales para la imposición, revisión o modificación de una pensión alimentaria, la mencionada legislación le exige al juzgador computar la misma mediante las *Guías Mandatorias para Fijar y Modificar Pensiones Alimentarias en Puerto Rico* (*Guías Mandatorias*)*,* **a no ser que el alimentante haya aceptado capacidad económica**. *Díaz Rodríguez v. García Neris*, 208 DPR 706, 719 (2022). En cuyo caso, no serán de aplicación dichas guías. Véase *Santiago, Maisonet v. Maisonet Correa*, supra.

**-C-**

Desde *Santiago, Maisonet v. Maisonet Correa*, supra, es norma establecida que el alimentante que acepta capacidad económica, **debe satisfacer el cien por ciento (100%) de los gastos razonables de los menores**. De este querer que se le imponga pagar solo una proporción de los gastos bajo el fundamento de que la persona custodia también debe realizar una aportación, por imperativos de justicia y de principios matemáticos básicos, deberá divulgar sus ingresos a fin de utilizar las *Guías Mandatorias* y poder adjudicar la participación correspondiente a la madre y al padre.

Asimismo, se estableció que en los pleitos de pensión alimentaria en donde el padre no custodio acepte tener capacidad económica, **las *Guías Mandatorias* no le serán de aplicación**. Una vez aceptada la capacidad económica, solo resta determinar los gastos razonables del menor.

**-D-**

De ordinario, un tribunal apelativo no debe intervenir con las determinaciones de hechos ni con la adjudicación de credibilidad que haya efectuado el juzgador de los hechos, ni tiene facultad de sustituir por sus propias apreciaciones, las determinaciones del foro de instancia. *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717 (2007); *Rolón v. Charlie Car Rental*, 148 DPR 420 (1999). Esto es, los tribunales apelativos deben mantener deferencia para con la apreciación de la prueba que realiza un tribunal de instancia toda vez que el juez o la jueza de primera instancia tuvo la oportunidad de observar toda la prueba presentada y, por lo tanto, se encuentra en mejor situación que el tribunal apelativo para considerarla. *Sepúlveda v. Departamento de Salud*, 145 DPR 560 (1998).

A manera de excepción, los tribunales apelativos intervendremos con las determinaciones emitidas por el foro primario cuando se pruebe que dicho foro actuó con prejuicio o parcialidad, incurrió en craso abuso de discreción, o que incurrió en error manifiesto, y que la intervención en esa etapa evitaría un perjuicio sustancial a la parte afectada por su determinación. *BPPR v. SLG Gómez-López*, 2023 TSPR 145, 213 DPR ____ (2023); *VS PR, LLC v. Drift-Wind*, 207 DPR 253, 273 (2021); *Umpierre Matos v. Juelle, Mejías*, 203 DPR 254, 275-276 (2019); *Rivera y otros v. Bco. Popular*, 152 DPR 140, 155 (2000).

**-E-**

La Regla 104 de las Reglas de Evidencia, establece los aspectos procesales para el ofrecimiento, admisibilidad o exclusión de la evidencia, 32 LPRA. Ap. VI, R. 104. En concreto, la regla dispone que:

(A) Requisito de objeción

La parte perjudicada por la admisión errónea de evidencia debe presentar una objeción oportuna, específica y correcta o una moción para que se elimine del récord evidencia erróneamente admitida cuando el fundamento para objetar surge con posterioridad. Si el fundamento de la objeción surge claramente del contexto del ofrecimiento de la evidencia, no será necesario aludir a tal fundamento.

(B) Oferta de prueba

En el caso de exclusión errónea de prueba, la parte perjudicada deberá invocar el fundamento específico para la admisibilidad de la evidencia ofrecida y hacer una oferta de prueba de forma que surja claramente cuál es la evidencia que ha sido excluida y la naturaleza, propósito y pertinencia para la cual se ofrece. No será necesario invocar tal fundamento específico ni hacer la oferta de prueba cuando resultan evidentes del contexto del ofrecimiento.

El Tribunal permitirá la oferta de prueba y determinará si debe hacerse mediante un resumen de la evidencia ofrecida o el interrogatorio correspondiente. El Tribunal podrá añadir cualquier manifestación que demuestre el carácter de la evidencia, la forma en que fue ofrecida, la objeción a su admisión y la resolución sobre la exclusión.

(C) Objeción u oferta de prueba continua

Una vez el Tribunal dicta una resolución definitiva en el récord, para admitir o excluir prueba, ya sea antes o durante el juicio, una parte no tiene que renovar una objeción u oferta de prueba para conservar su derecho a plantear el asunto en apelación.

Sobre el efecto que tendrá el error en la admisión o exclusión de evidencia, la Regla 105(A) de las de Evidencia, 32 LPRA. Ap. VI, R. 105(A), dispone lo siguiente:

No se dejará sin efecto una determinación de admisión o exclusión errónea de evidencia ni se revocará por ello sentencia o decisión alguna a menos que:

(1) la parte perjudicada con la admisión o exclusión de evidencia hubiere satisfecho los requisitos de objeción, fundamento u oferta de prueba establecidos en la Regla 104 y

(2) el Tribunal que considera el señalamiento estime que la evidencia admitida o excluida fue un factor decisivo o

> sustancial en la sentencia emitida o decisión cuya revocación se solicita.

De acuerdo con las disposiciones de las reglas mencionadas anteriormente, el foro apelativo debe determinar "si la evidencia en controversia, la cual fue erróneamente admitida sobre la oportuna y correcta objeción de la parte perjudicada por la misma, fue o no un factor decisivo o sustancial en el resultado del caso; esto es, si dicha evidencia pudo haber tenido una influencia, notable y determinante, en el veredicto, fallo, o sentencia que emitiera el juzgador de los hechos en el caso ante su consideración, fuera éste civil o criminal". *Pueblo v. Ruiz Bosch*, 127 DPR 762, 787-788 (1991).

A la luz de las normas jurídicas antes expuestas, procedemos a resolver.

**-III-**

En el presente caso, debemos determinar si el foro primario incidió en la determinación de la pensión alimentaria a favor del menor S.A.C.M., hijo procreado entre la señora Matosantos Lewis y el señor Cardona Firpi.

En síntesis, el foro primario le impuso al apelado la obligación de satisfacer las siguientes pensiones alimentarias según los períodos de tiempo que se indican: (1) $9,314.35 mensuales desde el 27 de noviembre de 2020 hasta diciembre de 2021; y (2) $5,268.10 mensuales a partir de enero de 2022.[18]

Además de las cantidades estipuladas, ordenó al señor Cardona Firpi asumir el 50% del costo de mantenimiento de la vivienda, servicios de handyman y limpieza de los aires acondicionados; (2) el costo total en regalos para los cumpleaños a los que el menor haya sido invitado, hasta un máximo de $80.00 por regalo; (3) los pasajes del menor en *Business Class* hasta un máximo

---

[18] *Íd.,* págs. 1134-1137.

de cuatro (4) viajes al año, así como las entradas del menor a parques, zoológicos, acuarios y museos, durante esos viajes; (4) el porciento correspondiente de los gastos del menor en alojamiento y transporte durante cada viaje, hasta un máximo de catorce (14) días por viaje, a un costo máximo de habitacion de $843.00 por noche; (5) hasta $10,000.00 anuales para los gastos relacionados con el cumpleaños del menor; y (6) a partir de agosto de 2022, el 100% de los gastos escolares del menor.[19]

De forma similar, ordenó al apelado encargarse directamente de los siguientes gastos del menor: (1) los servicios de internet para su tableta; (2) los servicios de barbería; (3) la leche Elecare; (4) las sesiones de terapias del habla, según lo recomendado por la terapista; y (5) las sesiones de terapia ocupacional, conforme la recomendación de la terapista. Además, cubrir los siguientes gastos del menor de forma directa o mediante reembolso: (1) los deducibles médicos; (2) las visitas o consultas médicas; (3) los medicamentos; (4) los análsis de laboratorios; (5) los gastos escolares (homeschooling) durante 10 meses; (6) el campamento de verano; (7) las clases de natación; (8) las clases de fútbol; (9) y el equipo necesario para jugar dicho deporte.[20]

Luego, tras una solicitud de reconsideración por parte del señor Cardona Firpi, el TPI modificó las pensiones alimentarias como sigue: $9,291.56 mensuales, para el período del 27 de noviembre de 2020 hasta diciembre de 2021, y $5,245.31 mensuales a partir de enero de 2022.[21]

Procedemos a atender los diversos señalamientos de error esgrimidos por la señora Matosantos Lewis. En su primer señalamiento, la apelante sostiene que el foro primario erró al

---

[19] *Íd.*
[20] *Íd.*
[21] *Íd.*, págs. 1168-1169.

excluir como evidencia documental prueba relativa a la compra de alimentos fuera del hogar y ropa del menor, a pesar de haberse sentado las bases sobre cómo se autentica la prueba electrónica. No le asiste la razón.

Según la Regla 105 de Evidencia, una determinación de exclusión errónea de evidencia no resultará en la revocación de una decisión a menos que la parte afectada por la exclusión haya cumplido con los requisitos de objeción, fundamentación u oferta de prueba establecidos en la Regla 104, y el tribunal que considera el señalamiento de error determine que la evidencia excluida fue un factor decisivo o sustancial en la decisión impugnada.

En este caso, tras revisar la evidencia presentada, no consideramos que la evidencia excluida haya sido un factor decisivo o sustancial en la recomendación de la Examinadora con respecto a los gastos en la compra de alimentos fuera del hogar y ropa del menor. Es importante señalar que, además de los documentos excluidos, la Examinadora tuvo ante sí varios testimonios, incluyendo los de la apelante, el señor Cardona Firpi, la abuela paterna del niño, la niñera del menor y otras personas.

En segundo lugar, la señora Matosantos planteó que el TPI erró al utilizar como pago de renta de la propiedad una cuantía propuesta por el alimentante sobre la cual no se desfiló prueba alguna. No le asiste la razón.

Según consta en el expediente del caso, el 30 de enero de 2021, cuando el apelado cuestionó el costo de alquiler de una nueva propiedad propuesta por la apelante para mudarse del lugar donde residía con el menor, presentó como evidencia el contrato de arrendamiento del hogar de la señora Matosantos y el menor, el cual establece un monto de $2,500.00.[22] Es importante destacar que este

---

[22] *Íd.*, pág. 68-69.

contrato es entre el señor Cardona Firpi y su madre, la Sra. María Firpi. De hecho, este dato también fue reconocido por la señora Matosantos Lewis en su *Moción Informativa y Solicitud de Remedio* al expresar que el lugar donde reside con el menor es propiedad de la Sra. María Firpi, madre del apelado.[23]

En consecuencia, el 1 de febrero de 2021, el tribunal de instancia atendió el asunto de la vivienda y dictó una *Orden* en la que dispuso que: "[e]n cuanto a la vivienda del menor, se tomará en consideración el arrendamiento mensual a esta fecha de la propiedad en que reside el menor con su madre, desde que se presentó la demanda de divorcio".[24] Incluso, el 3 de febrero de 2021, la apelante presentó una reconsideración sobre la orden emitida el 1 de febrero de 2021[25] y el TPI la declaró "no ha lugar".[26]

Además, según el testimonio de la señora Matosantos Lewis, el menor ha vivido en un apartamento en Guaynabo desde su nacimiento, específicamente desde el 5 febrero de 2018.[27] Por consiguiente, consideramos que el análisis realizado por la Examinadora es razonable, ya que tomó en consideración la determinación del tribunal de instancia para calcular el valor de la vivienda, la cual ha sido la misma desde el nacimiento del menor hasta la presentación de la demanda, así como el contrato de arrendamiento y el testimonio proporcionado por la propia apelante.

Por otra parte, la apelante señaló que el TPI erró al hacer determinaciones sobre los gastos básicos del menor, de forma contradictoria al estilo de vida probado sobre los demás gastos de éste. Por la misma línea, indicó que erró al calcular los gastos de

---

[23] *Íd.*, págs. 70-71.
[24] *Íd.*, pág. 79.
[25] *Íd.*, págs. 93-110.
[26] *Íd.*, págs. 240-242.
[27] Transcripción de la vista celebrada el 9 de septiembre de 2021, pág. 35. De hecho, en la página 21 del recurso de *Apelación,* la apelante indicó que "reside actualmente en un apartamento que pertenece a la madre del apelado, siendo esa la residencia donde vivían las partes vigentes el matrimonio".

comida dentro y fuera del hogar como si fuera un ejercicio matemático exacto, estableciendo la cuantía únicamente de acuerdo con los recibos de compras presentados a pesar de la apelante haber establecido que no contaba con la totalidad de la prueba.

Dado que estos señalamientos están relacionados, los discutiremos conjuntamente. Según discutido en la Sección II de esta Sentencia, las decisiones tomadas por los foros primarios son objeto de gran deferencia por parte de los tribunales de apelación. *Citibank et al. v. ACBI et al.*, supra, pág. 735. En ese sentido, no debemos intervenir con las determinaciones emitidas por el Tribunal de Primera Instancia y sustituir el criterio utilizado por éste en el ejercicio de su discreción, a menos que se pruebe que dicho foro actuó con prejuicio, parcialidad, cometió un claro abuso de discreción, o incurrió en error manifiesto, y que la intervención en esta etapa evitaría un perjuicio sustancial a la parte afectada por su decisión. *BPPR v. SLG Gómez-López,* supra; *VS PR, LLC v. Drift-Wind,* supra, pág. 273.

Después de una evaluación exhaustiva del expediente bajo nuestra consideración y de la normativa aplicable al caso, no encontramos razones que justifiquen preterir la deferencia otorgada al Tribunal de Primera Instancia. En consecuencia, llegamos a la conclusión de que el foro primario no incidió en su decisión respecto a los gastos básicos del menor, así como los gastos de comida dentro y fuera del hogar.

Finalmente, la apelante esgrimió que el TPI erró al imponerle a la madre custodia el pago de una porción de los gastos de éste, a pesar de ser gastos producto del opulento estilo de vida al que el apelado lo tenía acostumbrado.

Según la norma establecida por el Tribunal Supremo en *Santiago, Maisonet v. Maisonet Correa,* supra*,* queda meridianamente claro que la parte que acepta capacidad económica

es responsable de pagar el cien por ciento (100%) de los gastos razonables del menor. En este caso, el TPI impuso al señor Cardona Firpi asumir el 50% del costo de: (1) mantenimiento de la vivienda, (2) servicios de handyman y (3) limpieza de los aires acondicionados. Consideramos que estos gastos deben ser considerados como gastos razonables del menor. Por lo tanto, procede que al apelado asuma el 100% de estos, de acuerdo con *Santiago, Maisonet v. Maisonet Correa*, supra.

**-IV-**

Por los fundamentos que anteceden, *modificamos* la Sentencia apelada y ordenamos la devolución del caso al TPI para la continuación de los procedimientos, de conformidad con lo aquí resuelto.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones